UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA LOCK,

        Plaintiff,

                                      Case No. 06-CV-11024

vs.

                                      HON. GEORGE CARAM STEEH

CONTINENTAL INSURANCE COMPANY,
a/k/a ENCOMPASS INSURANCE
COMPANY,
        Defendant.
_____/

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    This lawsuit seeks no-fault insurance benefits arising out of an automobile accident that occurred on June 25, 1997. Plaintiff Patricia Lock seeks attendant care benefits here for care provided to her son Jimmy Lock since January 19, 2005. Now before the court is defendant Continental Insurance Company a/k/a Encompass Insurance Company (Encompass') motion for summary judgment. Because genuine issues of material fact exist, Encompass' motion must be denied.

BACKGROUND

    It is alleged that Jimmy Lock suffered a traumatic brain injury as a result of a rollover motor vehicle accident which occurred on June 25, 1997. He is now 33 years old and resides with his mother Patricia Lock. Patricia Lock has been caring for Jimmy Lock since the accident. In this lawsuit, she alleges that she is entitled to attendant care benefits for 24-hour a day services. Benefits are sought from January 15, 2005 to the present time. Benefits for earlier time frames were the subjects of two prior lawsuits

1

decided in Wayne County Circuit Court. In the first case, the jury returned a verdict in the amount of $343,946.10. The second case settled with payment to the Estate of Jimmy Lock in the amount of $475,000 and payment to Patricia Lock for her claim for attendant care in the sum of $125,000.

Plaintiff claims that Jimmy Lock requires 24-hour a day care. In support of this claim, she relies on her own affidavit, expert testimony, medical records, and records of his treating physicians. Most of the evidence that plaintiff relies on stems back as far as 1997 or 1998 when Jimmy Lock first suffered his injuries. First, she has submitted his discharge summary from the Rehabilitation Institute from 1997 which includes follow up instructions that "the patient will need 24 hour supervision at home." Plaintiff also relies on medical records from Rehab Plans showing that on August 28, 1998, an evaluation of Jimmy Lock found that he needed to be watched at all times and could not go anywhere alone because he was at risk for a seizure. She also submits the testimony of two doctors who testified at Jimmy Lock's 2000 trial in Wayne County Circuit Court. Dr. Zafonte, who treated Jimmy Lock at the Rehabilitation Institute in the summer of 1997, testified that upon discharge, he needed 24-hour supervision. Dr. Bradley Sewick, a neuropsychologist evaluated Jimmy Lock in 1998 and testified at his 2000 trial that he needed 24-hour care either at home or in a residential community. Dr. Sewick also issued reports in 2004 and 2006 reaching the same conclusion.

Plaintiff also relies on evidence obtained after the 2000 trial. Specifically, plaintiff obtained three independent medical examinations in 2007. Dr. Eliot Wagenheim, a psychiatrist, evaluated Jimmy Lock and issued his opinion on May 25, 2007 concluding that the June 25, 1997 accident was the cause of Jimmy Lock's cognitive disorder,

2

seizure disorder, and sleep disorder. Plaintiff also relies on the report of neurologist Dr. Gerald Robbins who issued a report on June 20, 2007 which opined that Jimmy Lock requires 24-hour attendant care. Plaintiff also admits that an independent medical examination by Manfred Greiffenstein concluded that Jimmy Lock's condition was unrelated to the June 25, 1997 accident but was caused by plaintiff's chronic schizophrenia. Plaintiff dismisses Dr. Greiffenstein's report on the grounds that his partner, Dr. Baker, testified at the 2000 trial that Jimmy Lock's injuries were unrelated to the accident, and yet the jury returned a verdict for the plaintiff.

Renee LaPorte, a disability and managed care specialist, issued a report in connection with the 2004 lawsuit filed in Wayne County Circuit Court which concluded that Jimmy Lock required constant monitoring and received 24-hour care by his mother. Renee LaPorte updated her attendant care evaluation on March 26, 2007 and reached the same conclusion that he required constant monitoring and that without the care provided by his mother, he would probably require permanent placement in a psychiatric facility.

In response to Encompass' request for a report of Jimmy Lock's primary care physician, plaintiff submitted a letter from Dr. Muhsin Al-Rawi which states "Mr. Lock would require 24 hr. supervision and care due to his traumatic brain injury and tendency for convulsive seizure." Finally, plaintiff relies on the report of psychiatrist Gerald A. Sheiner whose report of August 11, 2006 concludes that Jimmy Lock "is in need of constant supervision and 24-hour attendant care. His disturbed sleep makes the attendant care necessary on a 24 hour basis."

In addition to the expert opinions of Jimmy Lock's treating physician and others,

3

Patricia Lock also relies on her affidavit. In that affidavit, Patricia Lock avers that she provides 24-hour care and supervision, that she makes certain that he takes his medication, that she arranges for his hospitalization when he has seizures, that she is his court appointed guardian, that she cooks and grocery shops for him, that she drives him places, intervenes when he grows confrontational with others, receives his disability checks and gives him money, tries to prevent his substance abuse, and cannot leave him alone for more than one hour.

Encompass claims that Patricia Lock's deposition conflicts with her affidavit testimony and shows that she does not provide 24-hour care to Jimmy Lock. Encompass relies on Patricia Lock's deposition testimony that Jimmy Lock occasionally goes out with his brother or friends, sometimes spends the night at his cousin's house, and sometimes is left home alone. At her deposition, Patricia Lock admitted that she did not take Jimmy Lock to all of his doctor appointments or to all of his emergency visits to the hospital. Jimmy Lock's treating physician Dr. Al-Rawi testified at his deposition that Jimmy Lock sometimes appeared for medical appointments on his own, including one time when he had a grand mal seizure in the waiting room. When he reported alone, Jimmy Lock would take his prescriptions and signed his consent to treatment. In terms of his medication, Jimmy Lock testified that he carries his medication on his person and he picks it up from the pharmacy on his own. Patricia Lock testified that Jimmy Lock forgot to take his medication on at least one occasion. Jimmy Lock's treating physician testified at his deposition that Jimmy Lock told him there was a two-week period where he had run out of his medication. At his deposition, Jimmy Lock admitted to regular marijuana use. Encompass claims this proves that

4

Patricia Lock failed to provide 24-hour attendant care. Moreover, Encompass claims no coverage is due because Patricia Lock has no record or logs of the care provided. In short, Encompass claims that plaintiff has failed to submit reasonable proof in support of her attendant care claims.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original); <u>see</u> also <u>National Satellite Sports, Inc. v. Eliadis, Inc.</u>, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see</u> also <u>McLean v. 988011 Ontario, Ltd.</u>, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. <u>Anderson</u>, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. <u>McLean</u>, 224 F.3d at 800 (citing <u>Anderson</u>, 477 U.S. at 252).

## ANALYSIS

I. <u>Reasonable Proof</u>

Michigan's No-Fault Act, MCL § 500.3107(a) provides that a claimant is entitled to "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Encompass claims that Patricia Lock fails to carry her burden of proving all expenses reasonably incurred. In support of this argument, Encompass relies on the Michigan Supreme Court's decision in <u>Welton v. Carriers Ins. Co.</u>, 421 Mich. 571, 579 (1984). Encompass cites to <u>Devillers v. Auto Club Ins. Ass'n</u>, 473 Mich. 562 (2005) which it alleges overruled <u>Welton</u> on other grounds. <u>DeVillers</u> did

6

not directly overrule Welton but did abrogate the doctrine of judicial tolling recognized in that case.

In Welton, the plaintiff was injured in an automotive accident on December 4, 1978. 421 Mich. at 574. He received worker's compensation benefits during the time he was out of work from January 23, 1979 to July 28, 1980. Id. When he returned to work, he discovered he was entitled to no-fault benefits and filed a claim for such benefits on August 4, 1980. The insurance carrier paid him no-fault benefits for the one-year period preceding the date of his claim, but refused to pay further benefits for the time period between the date of the accident, December 4, 1978, and the date that the claim was filed, August 4, 1979. Id. The issue presented was whether the "one-year-back-rule" which limits recovery of no-fault insurance benefits to one-year from the date the action is filed was tolled by plaintiff's filing of a workers' compensation claim for the same injuries. Id.

In that case, the Michigan Supreme Court assumed that judicial tolling of the "one-year back rule" would apply so long as a triggering event existed. The Court found that to trigger tolling, it was not enough that a mere "notice" of claim be filed, but an actual claim for a specific amount of benefits must be submitted. Id. at 579. Since the plaintiff sought to rely solely on his worker's compensation claim with the same insurance carrier, the court found that such a "general notice of injury" was "insufficient to trigger tolling." Id. at 579. Defendant cites the following language from Welton in support of its argument here:

> Until a specific claim is made, an insurer has no way of knowing what expenses have been incurred, whether those expenses are covered losses and, indeed, whether the insured will file a claim at all. It is

> therefore illogical to expect the insurer to formally 'deny' an as yet unperfected claim.

Id.  Defendant uses this citation out of context.  Unlike the present matter, the plaintiff in Welton sought to recover benefits outside the "one-year back rule" on the grounds that her collection of worker's compensation benefits under a separate policy put the carrier "on notice" of her claim for PIP benefits.  The Welton Court explained that under the No-Fault Act, there are two limitations on time of suit and one limitation on the period of recovery:

> (1) An action for personal protection insurance (PPI) benefits must be commenced not later than one year after the date of accident, <u>unless</u> the insured gives written notice of injury or the insurer previously paid PPI benefits for the injury.
>
> (2) <u>If</u> notice has been given or payment has been made, the action may be commenced at any time within one year after the most recent loss was incurred.
>
> (3) Recovery is limited to losses incurred during the one year preceding commencement of the action.

Id. at 576 (citing MCL § 500.3145(1)).  Following the dictates of the statute, the Welton Court found that plaintiff's workers' compensation claim constituted notice of the injury making the lawsuit timely under the first two prongs of the statute.  The only question arose as to the third part of the statue, namely whether the "one year cap can be 'tolled,' and thereby extended back in time."  The Court explained that more than "notice" is required to implicate judicial tolling.

Following Welton, the Michigan Supreme Court expanded the doctrine of judicial tolling to extend from the time the insured makes a specific claim for benefits to the date that liability is formally denied.  See Lewis v. Detroit Auto. Inter-Ins. Exch., 426 Mich. 93

8

(1986). The doctrine of judicial tolling of the "one-year back rule" no longer exists. In Devillers, the Supreme Court overruled Lewis and its progeny on the grounds that the no-fault "one-year back rule" must be strictly construed according to the plain meaning of the statute. In Devillers, the plaintiff was seriously injured in an automotive accident and collected PIP benefits for over one-year until which time the insurance carrier discontinued benefits based on a prescription that plaintiff no longer needed supervision. Id. at 565. One year and eight months after discontinuing benefits, the carrier wrote a letter to plaintiff formally discontinuing benefits. Id. Plaintiff filed a lawsuit for PIP benefits one month later. Id. The issue at stake was whether plaintiff could recover benefits under the doctrine of judicial tolling for the nine-months that elapsed between the time the carrier stopped paying PIP benefits and the time the carrier memorialized the discontinuation of benefits in writing. Id. The Supreme Court overruled Lewis and explained that the No-Fault statute already provides a statutory tolling provision thus, there would be "less justification for this Court to interfere with the statutory scheme." Id. at 580. The Court explained that the plain language of the No-Fault statute limits "a PIP claimant's recovery to benefits for losses incurred one year or less before the date on which the action was commenced." Id. at 552. The Court held that the "one-year back rule" of MCL § 500.3145(1) must be enforced by the courts of this state as our Legislature has written it, not as the judiciary would have had it written." Id. at 554.

The abrogation of the judicial tolling rule in DeVillers does not impact this lawsuit as plaintiff is not seeking any damages outside the "one-year back" rule and does not allege that judicial tolling saves any time-barred claims. Welton does not support

defendant's motion for summary judgment here. That case involved the question of whether the "one-year back rule" limiting the time period for the collection of PIP benefits was tolled because the plaintiff filed a worker's compensation claim. Patricia Lock is not seeking damages beyond the "one-year back" rule here and does not allege that the time period was tolled under the theory of judicial tolling. Unlike the Welton case, Encompass is on notice of Patricia Lock's claim for PIP attendant care benefits here. Patricia Lock first made a claim for attendant care benefits pursuant to the first lawsuit pending in Wayne County Circuit Court, later she asserted a claim in the second lawsuit, and finally she has made a claim in this lawsuit.

II.     Patricia Lock's deposition testimony

Encompass asserts that Patricia Lock's deposition testimony conflicts with her affidavit which states that she provides 24-hour a day care to Jimmy Lock. At her deposition, she admitted that Jimmy Lock occasionally goes to the movies with his brother or friends and that she at times goes to the grocery or runs errands without him. During his deposition, Jimmy Lock admitted to going to a concert with his friend and to staying over the night at his cousin's house. Patricia Lock contends that on rare occasions she does get respite from caring for Jimmy Lock but this should not vitiate her right to attendant care. Even when Jimmy Lock goes out with other family members or friends, Patricia Lock claims she remains responsible to see that he returns home and she is on call for any emergency that might arise.

In support of her argument, Patricia Lock relies on Booth v. Auto Owners Ins., 224 Mich. App. 724, 730 (1997), leave to appeal denied, 459 Mich. 894 (1998) where the court rejected the insurance carrier's argument that care provided by family

members was not recoverable solely because the parents did not charge the child for the care.  In Booth, the court explained that in determining the value of care provided to a disabled individual by his family members, "the value of the services and the determination of the value are matters properly left for the jury to decide."  Id.  The same holds true in this case.  Defendant is not entitled to summary judgment because some of the evidence suggests that Patricia Lock did not provide 24-hour care.  There is no dispute that she provided some care and the exact amount of care that is compensable remains a question for the jury.  In her complaint, she does not limit her claim to 24-hour a day care, but seeks remuneration for attendant care and nursing care generally.  Given the evidence now before the court, Patricia Lock has raised a genuine issue of fact as to whether she has provided and continues to provide attendant care which entitles her to PIP benefits.  This court need not decide at this juncture whether or not 24-hour a day care was provided, but merely whether Patricia Lock has come forward with enough proof to raise a question of fact as to whether she is entitled to any attendant care benefits.

Encompass claims that Patricia Lock does not ensure that Jimmy Lock takes his medication three times a day.  Encompass relies on Jimmy Lock's deposition testimony that he carries his bottle of pills with him at all times so that he remembers to take his medication and that he walks to the drugstore to pick up his medication on his own.  Patricia Lock maintains that Jimmy Lock is not competent to testify or lacks credibility based on his brain injury, and thus, his deposition testimony should not be considered.  Even if the court were to consider Jimmy Lock's testimony concerning his medication use, facts remain in dispute as to whether Patricia Lock managed Jimmy Lock's

prescriptions based on her deposition testimony and affidavit.

Encompass also argues that Patricia Lock has failed to show that she oversees Jimmy Lock's hospitalizations and medical care on a 24-hour basis. Encompass points to her deposition testimony that of his four hospitalizations over the past year and a half, she brought him to the hospital only two times. Patricia Lock responds that arranging for another family member to take Jimmy Lock to receive medical care does not obviate the fact that she is responsible for his care and supervision on a 24-hour basis.

In its motion for summary judgment, Encompass also argues that the evidence shows that Patricia Lock failed to accompany Jimmy Lock to his doctor appointments. In support of this claim, Encompass relies on the deposition of Dr. Al-Rawi who testified that Jimmy Lock appeared alone for his appointments, that he missed appointments, and failed to provide a new address when he moved. Dr. Al-Rawi testified that the last time he treated Jimmy Lock was in July, 2006 when he came by himself and upon leaving, had a grand mal seizure in the waiting room. Patricia Lock responds that she did accompany Jimmy Lock to his doctor visits but that she waited for him in the waiting room. On the date of his grand mal seizure, she claims that she drove Jimmy Lock to the appointment and was returning to pick him up when the seizure took place.

Lastly, Encompass argues that Patricia Lock is not entitled to attendant care benefits because she fails to keep him from abusing marijuana. In her affidavit, Patricia Lock states, "I monitor or attempt to prevent any substance abuse to the extent that I am able." At her deposition, she admitted that it is possible that when Jimmy Lock goes out with his friends, he might "sneak" and abuse drugs. At his own deposition, Jimmy Lock testified that he smokes marijuana on a regular basis. Without question,

Encompass has come forward with evidence to suggest that Patricia Lock is not providing Jimmy Lock with appropriate care and supervision. Some of the evidence presented calls into question whether she provided Jimmy Lock with 24-hour care. But that is not the sole issue here. As long as she has come forward with evidence that she provided some attendant care to Jimmy Lock, she has met her burden to avoid summary judgment.

III.     Speculative Damages

Encompass argues that it is entitled to summary judgment because the damages Patricia Lock seeks are too "speculative." In support of this claim, Encompass relies on Skinner v. Square D Co., 445 Mich. 153 (1994). Skinner was a products liability case in which the court granted summary disposition for the defendant. In that case, the personal representative of the deceased plaintiff failed to prove a causal link between defendant's allegedly defective switch and the electrocution of the plaintiff. Id. at 485. By contrast, the instant suit for no-fault PIP benefits is rooted in contract law, not tort, and the issue of "causation" as used in the Skinner products liability action is inapposite. The question presented here is whether Patricia Lock is entitled to attendant care benefits under an insurance policy. Encompass claims that Patricia Lock may not recover damages because she has not suffered "measurable" damages. This court cannot agree. Based on the expert testimony, and the deposition and affidavit of Patricia Lock, there exists enough evidence for a jury to decide in Patricia Lock's favor. This is not to say that they will do so, but merely that as the evidence has been presented, they *could* do so.

Defendant also cites to Attard v. Citizens Ins. Co. of America, 237 Mich. App. 311

(1999) which involved plaintiff's claim for PIP benefits under the No-Fault Act. At the trial, plaintiff sought reimbursement for massage therapy and membership at a health club but failed to introduce any evidence as to the cost of either one. The court of appeals ruled that the lower court erred in not granting defendant's motion for JNOV as to the award of costs for the health club membership and the massage therapy. Plaintiff responds that this case is distinguishable from Attard because plaintiff has and will introduce evidence showing that Jimmy Lock requires attendant care and its value. Within the evidence attached to its response brief, Patricia Lock attached the expert report of Renee Laporte, a disability analyst and managed care specialist, who issued a report on March 26, 2007 regarding Jimmy Lock's attendant care. In that report, LaPorte states:

> Jimmie's mother continues to provide or arrange for his 24 hour a day attendant care supervision to maintain his safety and general well being, 2nd (sic) to his impulsive behaviors and uncontrolled seizure disorder, at the level of a Life Skills Trainer (LST), with a current value of reasonable service of $30.00 an hour.

Given this proffer, the court cannot find that plaintiff's claim for damages is so speculative as to require dismissal. The jury must be allowed to consider the testimony of Patricia Lock and the reports of her experts to determine if attendant care benefits should be awarded and at what cost.

Defendant also asserts that plaintiff's claim must be dismissed because she has failed to keep a log showing the actual time she spends caring for Jimmy Lock. Although a log is one way that Patricia Lock might try to substantiate her claim for attendant care benefits, it is not the only way that she may prove her case, nor is there any statutory provision in the No-Fault Act that requires such evidence. Encompass

14

further alleges that plaintiff's deposition, Jimmy Lock's deposition, Lock's medical records, and Dr. Al-Rawi's testimony completely discredit plaintiff's claim that she is providing 24-hour attendant care benefits. Encompass is correct that some of the evidence presented suggests that Jimmy Lock was not always in the care of his mother, that he did report for certain doctor appointments on his own, and he did, at least on occasion, monitor his own medication use. This evidence, while helpful to defendant's case, is not so overwhelming as to require the entry of summary judgment for Encompass. This is particularly true in light of the fact that plaintiff's claim is not limited to 24-hour a day care by his mother. Plaintiff has said that the jury will be asked to determine the extent of care provided and may return a verdict in the amount of 22 or 20 hours or even less.

Defendant relies on Berrios v. Miles, Inc., 226 Mich. App. 470, 478 (1997) for the proposition that plaintiff must prove her damages with "reasonable certainty" to recover. Berrios does not support this assertion. In that case, the plaintiff, a hemophiliac, was diagnosed with HIV in 1985, when he was just 14-years old. Id. at 471. He did not, however, become symptomatic with AIDS until July 1, 1992 and he filed his lawsuit on April 26, 1994. Id. at 472. The sole issue before the court was when his cause of action accrued. Id. at 471. The court held that the injury occurred when he received the blood product contaminated with HIV. Id. at 478. Therefore, his cause of action arose when he discovered he was HIV positive. Id. 477-78. Although plaintiff did not experience any symptoms of AIDS until seven years after his infection, the court ruled that his cause of action arose as soon as he knew that he was HIV positive and knew that the likely cause of this condition was the defendant's blood product. Id. Thus, the

15

court found that the statute of limitations barred his claim. Id.

The plaintiff in Berrios argued that the statute of limitations did not bar his claim because his damages were too "speculative" when he first discovered that he was infected with HIV. Id. at 478. The court of appeals disagreed and explained, "[a]lthough damages based on speculation or conjecture are not recoverable, damages are not speculative merely because they cannot be ascertained with mathematical precision." Id. at 478 (citations omitted). Berrios does not support defendant's motion for summary judgment. The issue here does not involve a statute of limitations defense. Patricia Lock has come forward with evidence linking Jimmy Lock's current condition to the accident and damages are not so speculative as to warrant dismissal.

IV.   Room and Board

Encompass also seeks summary judgment of Patricia Lock's claim for room and board. In her response, Patricia Lock agreed to withdraw her claim for room and board. Thus, this order will dismiss that claim.

V.   Sanctions

Finally, defendant seeks sanctions in the form of attorney fees on the grounds that plaintiff's claim is fraudulent and her deposition testimony conflicts with her affidavit. Defendant correctly points out that attorney fees are recoverable under the No-Fault Act, MCL § 500.3148(2):

> An insurer may be allowed by a court an award of a reasonable sum against a claimant as an attorney's fee for the insurer's attorney in defense against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation.

Plaintiff responds that it is entitled to Rule 11 sanctions against Encompass on the basis

that its motion for summary judgment is frivolous.

Given the deposition testimony of Patricia Lock, and the reports and depositions of her experts, the court finds that she has come forward with enough evidence to create a triable issue of fact. The court is mindful that plaintiff has recovered damages in two prior lawsuits arising out of the same automobile accident at issue here. As to plaintiff's request for Rule 11 sanctions, this court does not find that defendant's motion for summary judgment was frivolous. No sanctions against either party are appropriate at this time.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment hereby is DENIED.

Per agreement of the parties, plaintiff's claim for "room and board" benefits hereby is DISMISSED.

SO ORDERED.


Dated: January 15, 2008

                                            s/George Caram Steeh
                                            GEORGE CARAM STEEH
                                            UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 15, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee

Deputy Clerk