UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA LOCK,

         Plaintiff,

vs.

Case No. 06-CV-11024

HON. GEORGE CARAM STEEH

CONTINENTAL INSURANCE COMPANY,
a/k/a ENCOMPASS INSURANCE
COMPANY,
         Defendant.

_____/

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This lawsuit seeks no-fault insurance benefits arising out of an automobile accident that occurred on June 25, 1997. Plaintiff Patricia Lock seeks attendant care benefits here for care provided to her son Jimmy Lock since January 19, 2005. Previously, Jimmy Lock filed a lawsuit for accidental bodily benefits arising out of the same accident in Wayne County Circuit Court. A jury returned a verdict in his favor. Based on that verdict, Patricia Lock seeks a ruling here that collateral estoppel bars defendant Continental Insurance Company a/k/a Encompass Insurance Company (Encompass) from disputing that the rollover accident is the *sole* cause of Jimmy Lock's alleged disability. A hearing was held on January 10, 2008. For the reasons stated on the record and below Patricia Lock's motion for partial summary judgment must be denied.

BACKGROUND

On June 25, 1997, Jimmy Lock was seriously injured in a roll over automotive

accident. He was ejected from the vehicle and suffered a closed head injury. He also suffered a broken neck, as well as significant injuries to his right arm, left knee and spine. Jimmy Lock's physical injuries have healed but Patricia Lock alleges that his closed head injury has not. Jimmy Lock sought benefits under an insurance policy with Encompass. When Encompass failed to pay benefits, Jimmy Lock filed suit in Wayne County Circuit Court seeking medical and hospital expenses, wage loss, replacement services, and attendant care provided by his mother Patricia Lock. During the trial, Encompass raised two defenses: first, that Jimmy Lock's brain injury was the result of a gunshot wound in 1998, and secondly, that he suffered from paranoid schizophrenia which was unrelated to the accident.

During the trial, a battle of the experts took place. Encompass put on the testimony of Dr. Tyburski who testified that any medical treatment was attributable to the gunshot wound. Jimmy Lock, on the other hand, presented the testimony of Dr. Bradley Sewick who testified that Jimmy Lock suffered from a cognitive and psychotic disorder caused by the automobile accident and not the gunshot injury. Encompass also presented the videotaped deposition of Dr. W. John Baker who testified that Jimmy Lock's illness and disability was related to pre-automobile accident paranoid schizophrenia.

At the close of the proofs, Jimmy Lock asked the jury to return a verdict in the amount of $1,294,835.40. Of that amount, Jimmy Lock broke it down into medical and hospital expenses of $227,399, nursing and attendant care expenses of $1,015,000, replacement services of $20,300, and work loss of $32,156.48. The jury returned its verdict on June 28, 2000 and judgment entered on August 17, 2000. The jury awarded

2

Jimmy Lock $343,946.10 which amounted to approximately one-fourth of the damages claimed. This amount included medical and hospital care as well as attendant care benefits in the amount of $253,243, $1,095 in replacement services and $67,755 in interest. The jury returned work loss in the amount of $30,714 - which amounted to $1,442 less than Jimmy Lock sought for the three years post-accident.

After the judgment in the first trial entered, Encompass then refused to pay any no-fault benefits subsequent to the date of the verdict - June 28, 2000. Jimmy Lock then filed a second lawsuit in 2001 in Wayne County Circuit Court. In that case, Jimmy Lock filed a motion for partial summary disposition for a ruling that the court establish as a matter of law that his injuries were caused by the accident *only*. The court entered a summary order without an opinion that granted his motion. The parties settled that lawsuit on January 19, 2005. Pursuant to the settlement, Encompass paid Jimmy Lock $475,000 for medical and hospital care, and $125,000 to Patricia Lock for attendant care.

This is the third lawsuit brought for benefits on behalf of Jimmy Lock. Patricia Lock filed this suit in Wayne County Circuit Court. Encompass removed the action here on the basis of diversity jurisdiction. Patricia Lock now seeks attendant care benefits from January 19, 2005 to the present. Encompass argues that Patricia Lock never submitted any claim for 24-hour attendant care to Jimmy Lock. In its defense, Encompass argues that the care claimed has not been provided and that Jimmy Lock's injuries are unrelated to the June 25, 1997 automobile accident.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary

3

judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law,

the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

Patricia Lock moves for partial summary judgment in the form of a ruling that Jimmy Lock's injuries were caused solely by the 1997 motor vehicle accident. She claims that the doctrine of collateral estoppel, also known as issue preclusion, bars Encompass from arguing that the gunshot wound and his schizophrenia are related to Jimmy Lock's current disabilities. Under Michigan law, the doctrine of collateral estoppel provides that a party cannot relitigate an issue that has already been decided between the same parties in another lawsuit. People v. Gates, 434 Mich. 146, 154 (1990), cert. denied, 497 U.S. 1004 (1990); Braxton v. Litchalk, 55 Mich. App. 708, 718 (1974).

Jimmy Lock bears the burden of proving that issue preclusion exists because he is the party asserting preclusion. Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust, 410 F.3d 304, 310 (6th Cir. 2005). To establish preclusion, Jimmy Lock must demonstrate that:

(1) the parties in both proceedings are the same or in privity,

(2) there was a valid, final judgment in the first proceeding,

5

(3) the same issue was actually litigated in the first proceeding,

(4) that issue was necessary to the judgment, and

(5) the party against whom preclusion is asserted (or is privy) had a full and fair opportunity to litigate the issue.

Id., see Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 650 (6th Cir. 2007).

In this case, Jimmy Lock's collateral estoppel argument fails because he has failed to meet the third and fourth prongs of the test. The third prong requires that "the same issue was actually litigated in the first proceeding." Spectrum Health Continuing Care Group, 410 F.3d at 310. The first proceeding covered benefits arising from the accident until the jury returned its verdict on June 28, 2000. This lawsuit, on the other hand, seeks attendant care benefits from January 19, 2005 to the present. These issues are far from identical. Given this difference in time, collateral estoppel does not apply. Over thirteen years have elapsed since the injury occurred, making it entirely possible that Jimmy Lock has recovered in full or in part from his traumatic head injury sustained in 1997. It is also possible that a fact-finder might determine that the intervening gunshot wound to the head or Jimmy Lock's pre-existing schizophrenia are at least partly to blame for his present disability.

Although Encompass is relying on Dr. Baker's opinion again in this trial, his opinion here differs from his opinion offered in the first trial as he has considered evidence submitted after June 29, 2000. Encompass also points out that the discovery in this case, including interrogatories, depositions, medical record review and expert analysis all involve the question of Jimmy Lock's disabilities post the June 29, 2000 verdict. Time has not stood still for the last eight years. Jimmy Lock's medical condition

is not magically frozen in time to the date the jury verdict was reached in the first trial.

In addition, based on the ambiguous verdict form, this court has no way of knowing if or whether the jury awarded any damages for attendant care benefits. In the first trial, the jury verdict form asked the jury to award attendant care benefits and medical and hospital expenses together in a single sum. The jury returned a verdict for these two separate categories of damages - hospital expenses and attendant care benefits - combined together for a sum total of $253,243. This amount nearly totals the amount that Jimmy Lock sought for his medical and hospital expenses alone. His medical and hospital expenses included payments not only for the traumatic brain injury, but for his broken neck, spinal injury, and injuries to his right arm and left knee. During closing arguments, Jimmy Lock's lawyer argued that his medical expenses totaled $227,399. If the jury accepted this number, then it is possible that they awarded next to nothing for attendant care benefits. Of course, there is no way of knowing what amount, if any, the jury awarded for attendant care benefits since the verdict form grouped those damages with medical and hospital expenses. Even if the award is said to necessarily include some attendant care services, it is likely that attendant care was required for Lock's devastating physical injuries for a substantial period of time.

Patricia Lock also has failed to show that the issue at stake here was necessary to the judgment. She does not dispute that at the close of his proofs, Jimmy Lock's counsel asked for damages totaling over one million dollars - including $227,399 in medical expenses and $1,015,000 in attendant care benefits. Yet, the jury returned a verdict for both medical expenses *and* attendant care benefits in the amount of only $253,243. In total, Jimmy Lock recovered less than one-fourth of the benefits sought.

7

Given this scenario, it appears likely that the jury found that some of his injuries were part of his preexisting schizophrenia or were caused by the gunshot wound. If the jury had returned a verdict awarding the full amount claimed by Jimmy Lock then this court could reasonably find that the jury had rejected Encompass' defense that other factors were responsible for his injuries. But in light of the fact that the jury awarded only a small portion of the damages alleged, it appears quite likely that the jury was persuaded that the auto accident was only partially to blame for Jimmy Lock's condition.

This court has carefully reviewed the verdict form returned in the first trial. The first question posed to the jurors was simply, "Did the plaintiff sustain an accidental bodily injury?" They answered, "yes." The second question presented asks, "Were allowable expenses incurred by or on behalf of the plaintiff arising out of the accidental bodily injury referred to in Question No. 1?" In deciding the matter of causation, the jury was not asked whether the accident was the *sole* cause of the treatment and services expense. They awarded a mere $253,243 of the over one million dollars that Jimmy Lock sought in allowable expenses. On the very face of the verdict form, it appears that the jury accepted as true Encompass's argument that the intervening gunshot wound and/or Jimmy Lock's preexisting schizophrenia contributed to his disability. Since there is no proof here that the jury rejected arguments that intervening factors, other than the rollover, caused Jimmy Lock's disability, collateral estoppel does not bar Encompass from raising that same defense here.

Patricia Lock claims that because the jury awarded 100 percent of the work loss alleged, the jury must have found that the rollover accident was solely to blame for Jimmy Lock's injuries. This court cannot agree. First of all, the jury did <u>not</u> award 100

8

percent of the work loss alleged.  Jimmy Lock's counsel asked for $32,156 but the jury awarded only $30,714.  Secondly, the jury could easily have found that Jimmy's injuries from the car accident prevented him from working and still have found that other factors contributed to his need for medical, hospital and attendant care.  Under Patricia Lock's own argument, the fact that Jimmy Lock recovered only about twenty-percent of the allowable expenses he sought bars the doctrine of issue preclusion here.  The verdict form does not show which percentage of Jimmy Lock's injury was caused by the rollover and which percentage was caused by other factors.  Neither the court nor the parties are privy to the jury's deliberations.

Given the fact that the jury awarded only a small portion of the damages alleged, there simply is no proof that the jury found that the rollover accident was the lone cause of Jimmy Lock's injuries.  Patricia Lock has failed to meet her burden of proving that issue preclusion applies here.  The prior lawsuit does not bar Encompass from litigating whether Jimmy Lock's underlying psychological disorder or the gunshot wound, or any other preexisting or intervening factors, account for his alleged current need for attendant care benefits.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that Patricia Lock's motion for partial summary judgment hereby is DENIED.

IT IS FURTHER ORDERED that Encompass shall not be barred by the doctrine

of issue preclusion from raising any defense that intervening or preexisting factors are the cause of Jimmy Lock's current condition.

SO ORDERED.

Dated: January 15, 2008

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on

January 15, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee

Deputy Clerk

---